WELLS vs. MILLET.

Enforcement of a specific performance refused, on the ground that defendant was induced to make the contract by plaintiff's false representations to his injury.

APPEAL from the Circuit Court for *Racine* County.

Action to enforce the specific performance of a contract to convey lands in payment for a barge and the half interest in a steamboat, alleged to have been sold by plaintiff to defendant. The plaintiff excepted to the findings of fact and conclusions of law of the circuit court, and appealed from a judgment for the defendant.

*C. W. Bennett*, with *C. E. Dyer*, of counsel, for appellant.

*Ira C. Paine*, for respondent.

COLE, J.    The circuit court refused to enforce a specific performance of the contract mentioned in the complaint, upon two grounds: first, because the evidence showed that the parties plaintiff and defendant mutually agreed to and did rescind the contract on the 23d day of October, 1865; and second, because the plaintiff, at the time the contract was entered into, made representations to the defendant in regard to the character and pecuniary circumstances of Moulton, upon which the defendant relied, and which were untrue.    After a careful examination of the whole testimony in the case, we are inclined to the opinion, that it sustains the conclusion of the circuit court upon both points.

Does the evidence show that the contract was rescinded by mutual consent?

The plaintiff swears positively and distinctly that he never understood the contract was abandoned; that there was nothing said about rescinding the contract on the 23d of October; and that it was never rescinded to his knowledge.    The defendant,

Wells vs. Millet.

however, swears that the contract was rescinded at that time, and states the circumstances under which, and the place where, it was done. He, in substance, states, that he told the plaintiff that he had failed to perform the contract on his part; that the representations about Moulton were not true, and "that he would have nothing more to do with it," and the plaintiff agreed to it. Artemus McDonald swears, that he was present at the conversation when the defendant says the contract was rescinded, and that "the parties there agreed that the contract for the sale of the barge and one-half of the boat should be at an end." Joseph G. Botsford likewise testified, that he heard this conversation: "that the defendant informed the plaintiff that there was no use for him (plaintiff) to try and complete the contract as he had agreed; that the barge was not as represented by him in quality or capacity; and that Moulton was not such a man as he had represented him to be; that the plaintiff said he was disappointed in Moulton, in the barge, and in getting the claims off the steamer; and they then agreed to give up the contract, and make a new one for the whole steamer, when the plaintiff got rid of Moulton, and of the claims on the boat."

Now, throwing out of the case entirely the testimony of the plaintiff and defendant, or saying that their contradictory statements counterbalance and destroy each other, there still remains the testimony of these two witnesses, wholly unimpeached, who swear positively that the parties agreed in their presence to abandon and rescind the contract.

The witness William McDonald also testified that he heard a conversation between the parties on the 13th or 14th of November, when, something being said about making another trade, "the defendant said, 'You know the former contract is rescinded;' the plaintiff said that it was." Thayer likewise states a circumstance which tends to support the conclusion that the contract had been abandoned. For he says that

he was on the boat when the plaintiff came to La Crosse on the 29th day of October, and found the boat tied up there with heavy bills against her. The witness remarked that he thought that *Millet* was a better business man than to let the boat remain tied up in that manner; the plaintiff replied "that *Millet* claimed that the contract was at an end, and that he was out of it." According to the testimony of this witness, the plaintiff agreed then to pay off the crew, and said that he had ordered the captain to take the steamer and barge to Prairie du Chien. And as we understand the case, Moulton at this time was one-half owner in the boat, and still the plaintiff assumed the right to control her, at all events incurred liabilities to the crew, a thing it is a little singular he should do if the other half interest belonged to the defendant.

But on the other hand it must be admitted that some facts and circumstances were shown in regard to the conduct of the parties, which are inconsistent with the theory that they understood that the contract was abandoned. These items of testimony, however, are not of sufficient weight or importance to overcome the clear and positive testimony that the contract was rescinded by mutual consent on the 23d of October.

The court found further that the plaintiff contracted with one Moulton for the sale of the other undivided half of the steamer before the contract mentioned in the complaint was made; that the plaintiff made the representations to the defendant in regard to Moulton's character and pecuniary circumstances, as alleged in the answer; that the defendant relied upon these representations in making the contract; and that the representations were false. The evidence in support of this finding is quite as clear and satisfactory as it is to show a rescission.

But it is said, in answer to this point in the case, that, even admitting that the representations were made as alleged, still the defendant had no right to rely upon them; and further, that they were immaterial, because not relating to the charac-

Wells vs. Millet.

ter or condition of the property which was the subject-matter of the contract. The allegation in the answer is, that the plaintiff represented to the defendant that he had, before the 20th day of September, 1865, entered into an agreement with one Thomas Moulton to sell to him the equal one-half part of the boat, to run on the Mississippi river in the grain trade, and that if the defendant would purchase the other half interest in the boat, and the whole of the barge, he would secure the services of Moulton to manage the interests of the owners of the boat and barge in the trade upon the river; that Moulton was an honest, competent and thorough business man, who would do as he agreed, and who was well acquainted with the principal business men on the river; well conversant with the freighting business thereon; who could command, by his knowledge, business talents and integrity, more of the river trade than any other person engaged therein; that he was worth the sum of thirty thousand dollars money in hand, and that he would invest that sum for the purchase of wheat to be carried as freight in the barge. That such representations in regard to integrity, services, business qualifications and pecuniary responsibility of a part owner in a steamboat engaged in the river trade would be material, and afford a strong motive or inducement for a party to buy such property, seems to us a proposition too plain for serious controversy. For such property, under the management of such a person, would be vastly more productive than under the charge of a dishonest and unpopular agent and part owner. And it appears to us that the defendant had the right to rely upon the representations thus made to him, and that it cannot justly be said that he was carelessly indifferent to the ordinary and accessible means of information as to their truth or falsehood. That the representations in regard to Moulton's character and standing as a business man, and as to his being a man of wealth, were not in accordance

with the facts, is a point quite clearly established by the evidence in the cause.

*By the Court.*—The judgment of the circuit court is affirmed.